Cause NO's 03CR0084-83, 03CR0085-83, 03CR0086-83, 03CR0087-83

EX PARTE

DERWIN DALE LIVINGSTON

IN THE DISTRICT COURT
GALVESTON, TEXAS
56th JUDICIAL DISTRICT

RESPONSE TO
ANSWER TO APPLICATION FOR POST-CONVICTION
WRIT OF HABEAS CORPUS

COMES NOW Derwin Dale Livingston, Pro se, and would show this Honorable Court further evidence in rebuttal to John M. Thoma's refutation of Applicant's claims of ineffective assistance of counsel at trial in chief of Applicant in the above styled cases.

Ground One: Pervasive Denial of Assistance of Counsel.

In displaying his undiminished allegiance with his co-workers having precedence above and before his responsibility and duty to his client, Mr. Thoma audaciously responded consonant to the prosecutor's ambition, in stressing and emphasizing to this court that portion of alleged victim's testimony most likely to bias and prejudice this court against defendant, in lieu of addressing the points of issue of his Pervasive Denial of Assistance of Counsel, as put forth in the "Facts Supporting Ground One", of which was his [Mr. Thoma's] failure to bring attention or emphasis to fact that alleged victim admitted in her testimony that her mother 'RHONDA' actually was the owner of the 'bag of toys', and NOT Mr. Livingston, that her mother 'RHONDA' had 'bought in Vegas', the bag full of sexual devices. [RHONDA lived in Pasadena, fifteen (15) minutes from the boat]. And Mr. Thoma failed to bring attention to or emphasis to fact that NO such devices were on the boat [the very small, only 20ft long sailboat], to sustain the SEARCH which took place minutes after alleged victim's final departure from the boat on or about [o/a] 12·27·02, PROOF that the 'toys' were NOT on the boat, to have been employed. [Nor had they been at that point in time].

However, that same bag of Rhonda's toys was delivered to the police station by 2 females, Rhonda and Dana, proclaiming to have just retrieved it from the boat, the same boat that had been exhaustively searched on 12.27.02, (but they didn't know that, and no one was going to tell them either)

In court, Captain Kenneth Cranston vehemently rejected the DA's subordinate lead in her attempt to get him to testify that the evidence was given to him by Dana, rather than the truth, that RHONDA had presented it to him. (Dana was in fear of reprisal from the DA in that Dana was legal guardian of her little sister, the alleged victim, and the DA took advantage of that, using Dana against her father all she could; Dana was obviously intoxicated when she showed up for court, and grudgingly tried to follow the DA's lead). The DA was confident she could get Dana to say that she gave Rhonda's bag of toys to him instead of the truth, that she had a drivers license and Rhonda didn't; that's why she'd been there in the first place). — So, Captain Cranston grimaced a compromise which could not be construed as perjury, "One of them" gave the bag of devices to him. [She would have to suffice with that; even that was more bending than he was accustomed to].

Everyone concerned here is knowing that Rhonda handed her property over herself, to Captain Cranston. Undeniably she was present when the same property her own daughter had testified she'd "bought in Vegas", was given to Captain Cranston; therefore she was at least a part of the action of presenting the evidence, and legally subject to and for impeachment and cross-examination, but Mr. Thoma has failed to address this point too, or the point that he'd ignored this point in court too. Rhonda's absence at the trial, her unavailability, was a violation of the Sixth Amendment, "....to be confronted with the witnesses against him...", and Mr Thoma failed to guarantee her presence, even though he'd promised to have her there; he lied there too. Please see: 873 S.W. 2d 477 Mr Thoma is known to lie, as he did here. And he lied to this court in his answer to Ground Two also, stating "Because of the hostility of the witness "Rhonda" wife of Defendant it was decided by counsel and Defendant not to call her as a witness." For one thing, Rhonda is definately not hostile, and she's not nor at that time was she, my wife, AND Mr Thoma had promised me he'd have her in court to answer to all the aforementioned. He lied, again.

2.

In Ground One, Mr. Thoma failed to bring attention or emphasis to fact alleged victim testified that, and in the Appellant's Brief, p.15 that Mr. Thoma himself wrote: "She stated that she remembers the first night of sexual intercourse as sometime in May 2001 because it was the night of a "Big Storm". (S.F. Vol. 3, p.114), and expressed certainty as to the date. But, she testified that in 2001 CPS got involved with allegations of sexual abuse by a STEP BROTHER; [Please Note that this is a recurring ALLEGATION] (S.F. Vol. 3, p.115). And she stated that around this time defendant took her to Diamond Hill Medical Center in Ft. Worth for a PHYSICAL EXAM sometime after 9/07/01 and she stated the results showed she was a virgin, (S.F. Vol. 3, p.115) THIS WAS 4 MONTHS AFTER her alleged unforgetable first night of sexual intercourse on a 20ft. sailboat during a "BIG STORM", PROOF she lied again just like she'd lied before about her stepbrother and the others before that, (which were discussed during first trial, but mention of pervasively avoided during 2nd trial.

And in Ground One Mr. Thoma failed to bring attention or emphasis that the Doctor testified during first trial that she still had minimum of 50% of hymen intact that he could see in her vaginal exam photos, PHOTOS THAT HAD BEEN TAKEN 'AFTER' Mr. Livingston had been jailed, [she was still Virtually a Virgin] NO BODY STILL HAS 50% of hymen intact after sexual intercourse 100 times as she testified. SCIENTIFIC FACT, The crime had Never been committed. NEVER.

Ground Two: Denial of Due Process as Guaranteed by 14th Amendment.

As stated on page 2., Rhonda was Not Hostile, Not Mr. Livingston's Wife, and Not in Court to answer to aforementioned evidence she had presented to be used against Defendant even though Mr. Thoma PROMISED he'd have her there. ~~If He lied about a lot though DL~~

Ground Three: Denial of Due Process

Mr. Thoma's reply: "Same answer as to Ground One" If he is suggesting "true ownership was immaterial", he is wrong. The fact is that the property had not been on the boat to have been employed in the first place, AND the doctor's testimony that 50% of hymen was intact proved also that the entirety of testimony of ANYTHING having been inserted there was false. And if such items were not Mr. Livingston's property, they'd hardly be found on his boat: it was a lie.

3.

Ground Four: False evidence was used as basis for ILLEGAL Search and Seizure.

Mr. Thoma wrote "Attorney is unable to understand exact nature"...etc.? Attorney does not want to understand..., Attorney lied. Applicant's literary proficiency was adequate in writing it.

Ground Five: Illegal Search and Seizure

Here Mr. Thoma's lies insult any reader's intelligence; the Ground's facts, as presented in "Application" was accurate.

Ground Six: Illegal Use of evidence, according to "The Fruit Of Poisonous Tree Doctrine", a due process violation as per 14th Amendment. And Not "Illegal Search and Seizure" erroneously preferred to answer, "Same as to Ground Five", Mr. Thoma chose to avoid addressing the presented issue.

Ground Seven: Pervasive Denial of Counsel Contrary to due process as per 14th.

Mr. Thoma lied: "Attempts, [not really], were made by Counsel to Keep out the offensive material during the trial which was overruled by the trial court (SF).
—— The offensive material was the misrepresented Medical Vaginal exam photos falsely presented as "the Spread Eagled" pornographic photos found on defendant's laptop computer hard-drive, and RHONDA'S bagfull of sexual devices, none of which were on the boat to sustain the exhaustive SEARCH on 12.27.02, which proved defendant to be apart from alleged, false evidence as it were, but all of which was avoided being emphasized, or even mentioned, by INCOGNITO Attorney John Thoma.
      Defense counsel has the duty to attempt through all means to have evidence detrimental to his or her client suppressed. The fear of having a motion to suppress overruled does not justify counsel's failure to file one [MITCHELL v. State 762 S.W.2d. 916, 920 (Tex. App. San Antonio 1988, pet. ref.].
—— If one was filed, Mr. Thoma failed to give a copy to defendant...?

Ground Eight: Denial of due process as guaranteed by 14th Amendment...

Mr. Thoma Answered: "The Appellee's Brief was accepted by the Court of Appeals as having been timely filed and counsel respectfully demurs to them on this Ground".

4.

To render effective assistance of Counsel, any attorney would have insisted that the filing of Appellee's Brief in such an untimely manner should never have been, and should be stricken, so that Appellant could proceed unopposed. Pursuant Rule 38.6 TRAP (b) "The appellee's brief must be filed within 30 days after the Appellant's Brief was filed". The State failed to file a Motion For Extension Of Time To File Appellee's Brief. Appellant's Brief was filed 2·22·05. Appellee's Brief was received 5/09/05 and filed 5·25·05. Neither date was timely. — And Hense! Mr. Livingston was denied Due Process.

Ground Nine: Ineffective Assistance of Counsel

Mr. Thoma answered: "Applicant states that failure of Appellate Counsel to File Motion to Strike Appellee's Brief was ineffective assistance. Due to all facts counsel decided it would be without effect to do so".

Rebuttal: BE it KNOWN that Counsel knew that his client wanted Motion To Strike filed, as Applicant wrote on page 10d of his Application, and even prepared one, typed, lacking only the date, the signing, and mailing, but Mr. Thoma failed to comply even knowing Mr. Livingston couldn't file it pro se due to hybrid representation. An accurate synopsis is that Applicant was actually PREVENTED from any representation whatsoever in this matter, but, having anticipated Mr. Thoma's deliberate Obstruction of 6th Amendment Right to Counsel, Mr. Livingston politely requested Clerk McCullough to file a complete copy of the letter and Motion To Strike, which Mr. Livingston had prepared in advance for Mr. Thoma to date, sign and mail, and Clerk McCullough agreed; So, that PROOF is on file, NOW, even more than ineffective assistance of counsel. In this case, even pro se Counsel was prevented due to hybrid representation, also. So, Mr. Livingston was undeniably denied representation altogether !

And, Strickland Vs. Washington, 104 S.Ct. 2052 at 2053
  Criminal law [Key] 1163(2)
Actual or Constructive Denial of assistance of counsel altogether is legally presumed to result in prejudice U.S.C.A. Const. Amend. 6.

Ground Ten: Denial of effective assistance of counsel, (a denial of due process as guaranteed by 14th Amendment of the U.S. Constitution).

Here AGAIN Mr. Thoma INSULTS THE INTELLIGENCE OF THE COURT! with a ramdomly selected catagorical reply, that missed the target miserably.
Applicant's Facts Supporting Ground: "Mr. Thoma ACKNOWLEDGED Mr. Livingston's DENIAL OF SIXTH AMENDMENT RIGHT TO COUNSEL [in writing], and stated that Defendant's defense was infact "PROHIBITED BY THE TRIAL COURT", and I quote from "MOTION FOR NEW TRIAL" that Mr. Thoma prepared and filed in behalf of Mr. Livingston, Par. III. "Defendant had several meritorious defenses but the Defense was prohibited by the trial court from presenting these defenses and from going into any area of discovery that involved the possibility of bias and prejudice on behalf of the state's witnesses." (fault is of no consequence; the EXISTANCE is) Here Again Mr. Thoma declined, insisting that he was "PROHIBITED BY THE TRIAL COURT" from presenting these defenses" but never-the-less CONFIRMING that Mr. Livingston was denied effective assistance of counsel throughout his trial, that it was "PROHIBITED". etc. And this constitutes PROOF of the Denial of effective assistance of counsel, the aforestated MOTION FOR NEW TRIAL, dated 16 Aug 04 and signed appropriately by Mr. John M. Thoma, he who failed to provide [effective assistance of counsel], for what ever reason.

Mr. Thoma's answer: Counsel for Applicant presented, at the appellate stage, the points of error which presented merit for the Appellate Court's consideration. There may have been other points of error which upon legal review were to be deemed "harmless" however the major points of alleged error in the trial were covered by counsel.

Applicant's rebuttal: United States v. Cronic, 466 U.S. 648, 104 S.ct. 2039, 2047, 80 L. Ed.2d. 657 (1984) (13.) ("If counsel entirely fails to subject the prosecutions case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."
But in this case, "to subject the prosecutions case to meaningful adversarial testing", was PROHIBITED by the court [by the Kangaroo Court], a pervasive denial of Assistance of counsel, and denial of due process, as guaranteed through the 6th and 14th Amendments of the United States Constitution. Fulminante's Structural error, as we have here, is not "harmless".

6.

Ground Eleven: Court ERRED by having a BIASED FACT FINDER, (a denial of due process as guaranteed by 14th Amendment of U.S. Constitution." and NOT as Mr. Thoma deliberately Misquoted: "Bias Factor of Fact Finder".

Here Mr. Thoma has a "Blind Focus" ignoring the Supreme Court's conception of Fulminante's "Structural Error" at 310, 111 S.Ct. 1246. And his loyalty to his [cohorts] constituents comprised by the tribunal organized to convict repudiates the MOTION FOR NEW TRIAL's Par.III "Defendant had several meritorious defenses but the Defense was prohibited by the trial court from presenting these defenses and from going into any area of discovery that involved the possibility of bias and prejudice on behalf of the state's witnesses", since it truthfully exposes the tribunal's purpose [to convict], and the consequential structural error.

Now Mr. Thoma stated: "Counsel states under oath hereinafter that he was never biased against the Applicant or the presentation of his case."

But, whether he was biased or not has no effect on or consequence on his miserable pre-stated prohibitions imposed by the trial court which in fact did prohibit and prevent Mr. Thoma from subjecting the prosecution's case to meaningfull adversarial testing. But even more severe is fact that Defendant had several meritorious defenses but the Defense was prohibited by the trial court from presenting these defenses. ??? Consider that = " Prohibited by the trial court from presenting these defenses.

However, Constitutional Law [Key] 268.2(3)
    Elementary principle that when a state brings its judicial power to bear on an indigent defendant, it must take steps to assure that defendant has fair opportunity to present defense, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from belief that justice cannot be equal where, simply as result of his poverty, a defendant is denied opportunity to participate meaningfully in judicial proceeding in which his liberty is at stake. U.S.C.A. Const. Amend. 14.
    Glen Burton AKE v. OKLAHOMA 105 S.Ct. 1087 (1985)

Where Mr. Thoma stated: "Counsel states under oath hereinafter that he was never biased against the Applicant or the presentation of his case", he is simply admitting that he was in fact working incognito, as he still obviously is, in the tribunal organized to convict, a "Structural Error.

7.

Ground Twelve: Pervasive Denial of Counsel, [NOT what Mr Thoma wrote: "Due Process"], by having a Court Appointed Attorney for the Defendant actually working to prevent the presentation of any one of several meritorious defenses, and even PREVENTING any defense what-so-ever, even a pro se defense, i.e. hybrid representation.

Mr Thoma lied: "Testimony was taken throughout the trial as to the bias of the testimony of the witnesses and the victim and the various motives they would have had for testifying as they did (S.F.)"

Applicant rebuts: Mr Thoma has insultingly avoided the subject that was put forth.; he failed to ask the alleged victim anything about the 20 acres of land given to her at birth by Mr Livingston, that her grandparents illegally sold during time they had her in their care, as was presented in the Facts Supporting Ground Twelve, page 10g. of Application.

Ground Thirteen: Unconstitutionally Selected and Empaneled Jury,

Mr Thoma lied stating: "All parties agreed (including the Applicant) to accept giving up one juror strike in order to empanel the jury and proceed with the trial." ——— [Mr. Livingston wasn't even asked]
And Mr Thoma failed to address Facts Supporting Ground 13:
= Reference 1st Trial (SF, on or about 5/11/04), Judge Venso had a hearing due to her concern about the excessive media coverage, where she adjudicated that there about 100 people minimum, were required as prospective jurors, to weed out those who were prejudiced by the media.
And, "This jury was selected and empanelled in contravention with Judge Venso's precedent, and Mr Thoma knew it; he was there, but advocated it.

8.

Ground Fourteen: Court Appointed Attorney Mr. John Thoma Actively Represented Conflicting interest, that conflicting interest being the state.

Mr. Thoma's answer; "Same answer as to allegation Thirteen".

Mr. Livingston rebuts: Mr. Thoma is trying to make what is clearly "A matter of Law"; something that is for the sake of convenience "OK" to compromise. In this case he compromised Mr. Livingston's constitutional rights to a fair and impartial trial by a jury of his peers as guaranteed through the 6th Amendment of the U.S. Constitution, And his due process of law and equal protection of the laws as guaranteed through the 14th Amendment of the U.S. Constitution.

And Mr. Thoma lied in writing Mr. Livingston ever agreed to abridge any of his rights. That is one thing Mr. Livingston would Never do!

Ground Fifteen: Denial of Due Process: The consolidation of separate indictments for trial with NO 30-Day Notice was contrary to due process clause of the 14th Amendment of the U.S. Constitution.

Mr. Thoma's answer: It was agreed by all parties (including the applicant) to consolidate the offenses.

Mr. Livingston rebuts: Mr. Thoma lied; At that point in time Mr. Livingston was always told to "Follow my lead", and he'd try to cooperate as well as he could, but Mr. Livingston is positive that he Never agreed to that which is stated above. Mr. Livingston would never agree to anything contrary to due process!, Nor has he in the past.

Ground Sixteen: Denial of Effective Assistance of Counsel: Mr. Thoma was Deliberately Indifferent as was obvious by his Pervasive failure to object.

Mr. Thoma's answer: "Same answer as to Ground Fifteen"

Rebuttal: The 30-Day Notice is required by rule; Mr. Thoma knew that but was Deliberately Indifferent, And obviously did not need the 30 day notice, to have time to prepare a defense he had no plans to present.

9.

Ground Seventeen: Denial of Due Process, in that on or about 8/11/04, Judge Lerner Presided Contrary to State and Federal laws.

Mr. Thoma's answer: Counsel admits that he was unaware that the Visiting Judge I. Allen Lerner, had not filed an oath of office for the preceding eleven years if this is in fact true, however Judge Lerner was sitting as visiting judge from an official appointment from the Administrative Judge of the region.

Rebuttal: "Without the taking of the Oath prescribed by the Constitution of this state, one cannot become either a de jure or de facto judge, and his acts as such are void."

Ground Eighteen: Double Jeopardy;

Mr. Thoma's answer: The first trial resulted in a mistrial and the law of the state of Texas does not recognize a mistrial as a bar to the re-trial of the same charges.

Applicant Rebuts: The retrial was NOT a same presentation to a new jury, it was NOT a re-trial of the same charges, But it was [through trial and error], a lesser burden for the prosecution. It was manipulated to the favor of the prosecution, and with the 2 indictments which were most problematic to the prosecution dropped. It was not fair to the defendant, therefor in contravention with the due process clause of the 14th also.

Ground Nineteen: Denial of Due Process, Retrial started after jurisdiction Expired

Mr. Thoma's answer, [in defense of the state] "The re-trial of the charges against Applicant were in conformity with the laws of the State of Texas."

Rebuttal: "Federal laws are not superseded by State"
According to United States Code Annotated Title 18, C.C.P. 18§3161(e) If the defendant is to be tried again following a declaration by a trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final.
And, "Federal laws are not superseded by state."

10.

Ground Twenty: Evidence Unconstitutionally Submitted, a Denial of Due Process

Facts Supporting Ground: Secret Service Investigator was absent who at 1st trial introduced photos he'd gotten from the computer, and a 'Location Report' stating where each was located on the hard-drive. —— At a de novo trial, testimony at a prior hearing is inadmissible unless it is shown that the presence of the witness who testified at such hearing cannot be secured. - De Vargus v. Brownell, 251 F.2d 869." And the use of evidence that was not properly introduced, (as evidence), parallels Ex Parte Brandley 781 S.W. 2d 886 (Tex. Cr. App. 1989) quoting Mooney v. Holohan, 294 U.S. 103, 112 55 S.ct. 340, 342, 79. L.Ed. 791 (1935)(State's use of perjured testimony). "through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty."

Be it known that the State elected not to present this witness, and be it known that that left an open field to the jury, by the jurors not knowing what photos were from the computer, and whether or not the Medical Vaginal exam photos came from the Medical Department, or was to be shown surprisingly to the jurors, by being cupped in the palms of the prosecutor's hands, and jutted before the face of each juror for about 3 seconds, then promptly shifted before the eyes of the next, while Ms Parson is slowly grimacing her disgust about having discovered photos on the Defendant's laptop that could only be described as "spread eagled", and all the while the Judge has his back turned to the jurors in his way of invoking the misconception of his unawareness of the photo display to the jurors. And, if the INCOGNITO State Appointed Attorney claims he didn't see a thing, you can bet your life that he too is a member too.

And ~~such~~ thus was exactly what Mr Livingston witnessed, and how he was illegally and unconstitutionally convicted for ~~that which had NEVER OCCURRED~~ Crimes he did Not do, Nor had They been done. No Crime had been committed

11.

Ground Twenty-One: Pervasive Denial of Assistance of Counsel, as guaranteed through the 6th Amendment of the U.S. Constitution.

Mr. Thoma's answer: "Same answer as to Ground Twenty."

Rebuttal: Mr. Thoma worked in unison with the prosecutor in submitting the photos, and had he objected, no one could have heard it because they worked and talked very quietly before the bench, deliberately preventing being overheard.

Ground Twenty-two: Pre planned and orchestrated deliverance of false evidence and perjury from the retinue of a biased Court's entourage, designed to shock and outrage the jury.

Facts Supporting Ground: The "Spread-Eagled" Medical Exam photo show as described in Ground Twenty arrived, awkward but effective, and successful for the members of the tribunal organized to convict. Same as U.S. III. 1968 State may not entrust determination of whether a man is innocent or guilty to tribunal organized to convict. USCA. Const. Amends 6, 14.
   Witherspoon v. State of Illinois, 88 S.Ct. 1770, 368 rehearing denied 89 S.Ct. 67, 393 U.S. 898, 21 L.Ed. 186.

Mr. Thoma was making effort to distract Mr. Livingston from lies Ms Parson was making from the witness stand, about the terrible photos [none of which existed as was being described that Mr. Livingston was aware of], that were alleged to have been found on defendant's hard-drive & Mr. Livingston saw the entire performance. Ms Parson was lying about "Spread-Eagled" photos found on the computer while the prosecutor, Ms Vandiver, was fumbling Medical Vaginal photos trying to get a photo cupped in each palm of her hands; her difficulty/awkwardness in achieving it was an attention grabber; the judge turned his swivel chair to where his back was to her, and jury. Mr. Thoma failed to provide ample distraction to Mr. Livingston, [that being his part of the orchestration], and by the time Ms Vandiver had shown the last 3 or 4 jurors the photos she'd cupped in her palms, Mr Livingston stood up from his wheel chair and loudly exclaimed "That's not on the computer, that's PERJURY." But he was already too late; The jurors were already inflamed!

Ground Twenty-Three: 'BOLSTERING' of unimpeached evidence, in contravention with Due Process as guaranteed through U.S. Const. Amend. 14.

12.

Mr. Thoma's Answer: "Applicant's conduct at the trial sometimes resulted in an exchange of discourse between Applicant and the Attorney for the State which Counsel was hard-put to contain".

Rebuttal: Is it any wonder? Mr Livingston actually caught them; they got caught, and exclaimed "That's Perjury!" Quick thinking Ms Vangiver [DA] counterred brilliantly, "Well, it was just a slight exageration", then with emphasis and considerably increased volume, she continued dramatically with, "because of the SHOCKING PHOTOS THAT WERE FOUND ON YOUR HARD DRIVE!" The jury bought it, "hook-line-and-sinker", and transformed from jury, to LYNCH MOB! [There would be no repair for the damage done]. This court deliberately erred in permitting the State to BOLSTER unimpeached evidence.

Mr Thoma was practised in this sort of thing. See **873 S.W.2d 477**

Ground Twenty-Four: Prosecutorial Misconduct, (a denial of due process as guaranteed through the 14th Amendment of the U.S. Constitution).

Mr. Thoma's answer: It was evidenced during the trial that Applicant would inject comments into the trial and make statements to the Attorney for the state or to the court in general. Upon reading the transcript of the trial it will be noted that Applicant could be "difficult" at times to control both by the Court and his Attorney."

Rebuttal: Mr. Thoma is claiming Applicant's behavioral pattern was symptomatic to a mental disorder.
Tex.App.-Austin 2000. <u>During trial</u>, if evidence from any source raises the issue of defendant's competency, the trial court <u>MUST</u> convene a jury and conduct a hearing on competency. Vernon's Ann.Texas C.C.P. art. 46.02 §2(b). <u>OKU v. STATE</u>, 21 S.W. 3d. 589.

Ground Twenty-Five: Denial of Due Process, The State or Prosecutors cannot knowingly suppress evidence favorable to a defendant (exculpatory evidence), but did, in contravention with the due process as guaranteed through the 14th Amendment of the U.S. Constitution.

13.

Mr. Thoma's answer: "The redacting out of the information alleged was by law."

Rebuttal: Those portions were where alleged victim had admitted having falsely accused someone before of the same allegations that Mr. Livingston is now alleged to have committed. It is also where her accusations about her father are so rediculous, that she is evidenced to be a compulsive liar, which she is. Was this redacted by law of a biased retinue of tribunal organized to convict? Most certainly it was.
    How could it be by law to redact out where she stated that her father, (a white man), is a member of African Mafia? [Is there one?]
And does that NOT sound like a lie?
Applicant insists that the portion redacted out should be reassessed, and Applicant Complains that his Court Appointed Attorney should have objected to the redacting rather than aiding the prosecution in the redacting. Perfect Synopsis is: a design to conceal the obviousness of the fact that alleged victim is Compulsive Liar!

Ground Twenty-Six: Denial of Assistance Of Counsel, as guaranteed through the 6th Amendment of the U.S. Constitution.

Facts Supporting Ground: Reference preceeding page, Ground 25; In this case Mr. Thoma aided the Prosecutor in the suppressing. It would have been asinine for him to object to that of which he was a part.

Mr. Thoma's answer: "Same answer as to Ground Twenty-Five"

Rebuttal: Many people are convicted "by law", later to be proven innocent. And Mr. Livingston was convicted "by law", but he was innocent, Just as this evidence was redacted "by law", although it is undeniably EXCULPATORY

14.

Ground Twenty-Seven: Denial of Due Process as guaranteed through the 14th Amendment of the U.S. Constitution.

Mr Thoma: Counsel for Applicant requested a psychiatric examination of Applicant prior to the trial. Dr. Scarano performed the examination and concluded in his report that the Applicant was free from any mental problems or diseases that would prevent him from assisting in the defense of his case (SF).

Rebuttal:

~~Ex. ~~~~~~~~~~~~~~~~~, Tex. Crim. App. 1980. In determining that it was not necessary to empanel a jury to inquire into defendant's competency, it was error for trial court to rely on psychiatrist's conclusion which was not admitted into evidence.
GARCIA v. State, 595 S.W. 2d 538

Mr Livingston recalls NO such evidence having been admitted; Which Court? After all,

Tex. Crim. App. 1979 — A competency hearing is a separate and independant hearing before a different jury than the one on the trial on the merits.
Vernon's Ann. C.C.P. art. 46.02 § 4.
White v. State, 591 S.W. 2d 851.

Mr Livingston is almost positive he was denied an independent hearing before a different jury than the one on the trial on the merits contrary to Vernon's Ann. C.C.P. art. 46.02 § 4.

Tex. App. — Fort Worth 2005. Allice Bradford v. State 172 S.W. 3d 1, 5 Criminal Law [Key] 625(3)
Although head of mental health facility filed report stating that defendant had regained competency to stand trial, trial court was not authorized to proceed to adjudication of guilt without first making judicial determination that defendant had regained competency to stand trial.
Vernon's Ann. Texas C.C.P. art. 46.02

Ground Twenty-Eight: Pervasive Denial of Effective Assistance of Counsel as guaranteed through 6th Amendment of U.S. Constitution.

Facts Supporting Ground: Mr. Thoma failed to subpoena Business Accounting Records, (Company Books), maintained by Heather O'Dell, SISTER of Alleged Victim, concerning over $50,000.00 Missing Company Profit, she was responsible for. Thus would have shown a reasonable hypothesis other than guilt of the accused. Mr. Thoma had promised to get books Subpoena'ed, but lied.

Mr. Thoma's answer: "Testimony of the witnesses was elicited at trial showing any bias or motive they might have had for falsely testifying."

Rebuttal: Mr. Thoma's answer does nothing for showing a reasonable hypothesis other than guilt of the accused.
And, Mr. Thoma failed to mention the aforementioned over $50,000.00 Missing Company Profit that she (Heather) was responsible for.

And Mr. Thoma's answer here is contrary to what he'd written in Par. III of his "MOTION FOR NEW TRIAL"

Ground Twenty-Nine: Actual and/or Constructive Denial of Assistance of Counsel altogether, as guaranteed through 6th Amendment of U.S. Constitution.

Facts Supporting Ground: At 3 Sept 04 hearing for the "Motion For New Trial" Mr. Thoma replied that he was "Not going to stand there and argue the points of the case. Mr. Thoma denied assistance of counsel verbally; all present heard.

Mr. Thoma's answer: "Testimony of the victim was elicited that the objects presented were those used by Applicant on her. No lab work was conducted because of the number of people who handled the objects."

Rebuttal: Connor v. State, 877 S.W. 2d 325, 326 (Crim. App. 1994) "hearing on motion for new trial is critical stage requiring counsel.

And: An Applicant is entitled to relief if he or she was denied the right to counsel at any critical stage of the proceedings
Ex Parte Sanders, 588 S.W. 2d 383, 385 (Crim. App. 1979).

16.

Ground Thirty: Constructive denial of Counsel as guaranteed through 6th Amendment of the U.S. Constitution.

Facts Supporting Ground: Trial counsel's failure to actively advocate defendant's cause, and his failure to prepare a single one of the several meritorious defenses had by the Defense, PLUS the 'Closing Argument' which argued nothing, there by CHEATING defendant out of a 'Closing Argument' altogether, amounted to a 'Constructive denial of Counsel.

Mr. Thoma's answer: "Counsel for Applicant conducted an adequate during the course of his trial as evidenced by the trial transcript (SF).

Applicant's Rebuttal: Adequate what? Mr. Thoma appears to have carelessly omitted the word depicting whatever he conducted adequately, (during the course of the trial...", etc.)
Whatever it was, was other than a "Closing Argument."

Ground Thirty-One: Denial of Due Process, by Improper State Investigative procedure, Prosecutorial Discrimination and/or Misconduct in General.

Mr. Thoma's Answer: One must read the entire trial transcript in order to make the final determination in the allegations stated in this Ground are true and valid.

Applicant's Rebuttal: An evidentiary hearing is requested, and a comparison of trial transcripts, BOTH 1st and 2nd trials, and the PRODUCING of the 'LOCATION REPORT' and HARD-DRIVE to investigate the photo(s) Ms. Parson described as "Spread Eagled", AND, if such photo(s) are on the HARD-DRIVE, exactly Where, and when did it arrive? since No such photo was there in the 1st trial.

(prepared by law libary friends)
a joint effort

Respectfully Submitted,
Derwin Dale Livingston
Derwin Dale Livingston, 1258902
Applicant, Pro se

CC          signed ——> Derwin Dale Livingston

17.

## PRAYER

WHEREFORE Premises Considered Ex Parte ~~Livingston~~ Derwin Dale Livingston/Applicant Prays this Honorable Court construe liberally HAINES vs. KERNER, 94 S.Ct. 594 (1971), "Applicant is a layman, unskilled and inexperienced in the drafting of writs, formal pleadings of error, and the application of Law in General... and is thereby entitled to less stringent standards than those pleadings drafted by lawyers." And Mr. Livingston PRAYS this Honorable Court will accept this "RESPONSE TO ANSWER TO APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS", in the interest of justice.

Respectfully Submitted,

Derwin Dale Livingston
1258902

## DECLARATION

I, Derwin Dale Livingston, 1258902, do declare and certify that the statements made in the above instrument are true and correct to the best of my knowledge and belief under penalty of perjury.

Respectfully,

Derwin Dale Livingston, 1258902

## CERTIFICATE OF SERVICE

Ex Parte Derwin Dale Livingston, due to his status of indigence, and his inability to procure true and correct copies of the foregoing instrument, requests the clerk of the court to provide copies to all parties involved in this cause.

Date: 2-20-08

Respectfully Submitted,

(Prepared by law library friends)
a joint effort

Derwin Dale Livingston
TDCJ-ID-1258902
Pack ONE Unit
2400 Wallace Pack Rd.
Navasota, Texas 77868

cc

18.