UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DERWIN DALE LIVINGSTON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-1284 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

MEMORANDUM AND ORDER

The petitioner, Derwin Dale Livingston, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his August 2004 state felony convictions for aggravated sexual assault of a child under the age of 14 and sexual assault of a child. The respondent filed a motion for summary judgment, (Docket Entry No. 12), with a copy of the state court records. Livingston responded. (Docket Entry Nos. 15 and 20).

Based on careful consideration of the pleadings, the motion, responses, the record, and the applicable law, this court grants the respondent's motion and enters final judgment by separate order. The reasons are explained below.

I.     Procedural Background

Livingston was indicted in four cases in 2003. (Cause Numbers 03CR0084, 03CR0085, 03CR0086, and 03CR0087). Two indictments charged sexual assault of a child, and two charged aggravated sexual assault of a child. All four indictments alleged a prior burglary conviction. A May 2004 trial ended in a mistrial declared after the jury could not agree on a verdict. (No. 03CR0084, Docket Entry No. 6; No. 03CR0085, Docket Entry No. 5; No. 03CR0086, Docket Entry No. 5; No. 03CR0087, Docket Entry No. 5). At a second trial, the jury convicted Livingston on all

charges alleged in the indictments.  Livingston pleaded "not true" to the enhancement provisions.

On August 13, 2004, the jury found the enhancement paragraphs to be true.  The jury sentenced

Livingston to serve four life sentences and pay four $10,000.00 fines.  The First Court of Appeals

of Texas affirmed Livingston's conviction on March 26, 2006.  *Livingston v. State*, Nos. 01-04-

00955-CR, 01-04-00956-CR, 01-04-00957-CR, and 01-04-00958-CR (Tex. App.–Houston [1st

Dist.] 2006, pet. ref'd).  The Texas Court of Criminal Appeals refused Livingston's petitions for

discretionary review on February 7, 2007.  On December 21, 2007, Livingston filed applications for

state habeas corpus relief, which the Texas Court of Criminal Appeals denied on April 16, 2008

without a hearing or a written order, on the findings of the trial court.  *Ex parte Livingston*,

Application Nos. 69,601-01 at page after cover, 69,601-02 at page after cover, 69,601-03 at page

after cover, and 69,601-4 at page after cover.[1]

        On April 25, 2008, this court received Livingston's federal petition.  Livingston contended

that his convictions are void.  The grounds are listed below.[2]

        (1)        Trial counsel rendered ineffective assistance by:

                   (a)        failing to call attention to the exculpatory testimony of the alleged child-

                              victim, C.T., that the sexual devices retrieved from Livingston's boat

                              belonged to C.T.'s mother, Rhonda Turner;

                   (b)        failing to call attention to the fact that no sexual devices were found on

                              Livingston's boat when it was searched;

---

        [1]  All cites to state writ transcripts are to the largest volume in each proceeding.  Each proceeding
has two transcripts, a large one that includes most of the documents from the record, and a small one that is
the petitioner's "Response to Answer to Application for Post-Conviction Writ of Habeas Corpus."

        [2]  In this opinion, Livingston's claims are identified by these numbers.

(c)     failing to call attention to testimony about who brought the sexual devices;

(d)     failing to call Rhonda Turner as a witness;

(e)     failing to call attention to inconsistencies between C.T.'s testimony about the first incident of intercourse with Livingston and evidence from a later physical exam proving that she was a virgin;

(f)     failing to move for a jury instruction about the necessity of scientific evidence to connect the sexual devices to Livingston;

(g)     failing to file a motion to suppress the evidence obtained from the boat, a tattoo parlor Livingston owned, and his computer;

(h)     failing to use evidence of the victim's bias based on her interest in land sold by her grandparents;

(i)     agreeing with the prosecutor to use one less strike during jury selection;

(j)     failing to object to consolidating the indictments;

(k)     failing to object to the admission of nude photographs of C.T.;

(l)     "aiding the State" in the redaction and suppression of exculpatory evidence;

(m)     failing to subpoena Livingston's business records;

(n)     failing to present a closing argument; and

(o)     failing adequately to represent Livingston at the motion for new-trial hearing.

(2)     The trial court erred in:

(a)     failing to instruct the jury on the importance of scientific evidence to connect the sexual devices to Livingston;

(b)     preventing trial counsel from rendering effective assistance;

(c)     failing to remain an unbiased fact-finder;

      (d)     empaneling a jury in the face of pervasive media coverage;

      (e)     wrongfully consolidating the indictments without 30 days' notice;

      (f)     failing to conduct a competency hearing;

      (g)     presiding without first taking an oath of office; and

      (h)     retrying Livingston.

(3)     Appellate counsel rendered ineffective assistance by failing to move to strike the State's late-filed brief.

(4)     The appellate court erred by allowing the State to file its brief late.

(5)     The prosecution committed misconduct by:

      (a)     presenting false testimony and evidence to the jury behind the trial judge's back;

      (b)     failing to disclose a psychiatric report evidencing Livingston's incompetence;

      (c)     suppressing exculpatory evidence by redacting CPS records; and

      (d)     improperly investigating the alleged crimes.

(6)     The conviction was obtained by evidence that should have been excluded at trial.

(7)     Livingston's Sixth Amendment right to confront the witnesses against him was violated because Rhonda Turner did not testify.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 2-2s).

The respondent argues that claim 2(a) is unexhausted and procedurally barred, (Docket Entry No. 12, Respondent's Motion for Summary Judgment, p. 8), and that the remaining claims lack merit. Each claim and argument is examined below.

## II.     The Applicable Legal Standards

Livingston's petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

AEDPA provides as follows, in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached

by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where is should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson*, 215 F.3d 504, 508 (5th Cir. 2000). Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), *cert. denied*, 531 U.S. 831(2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1)—which mandates that findings of fact made by a state court are "presumed to be correct"—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut [ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Livingston is proceeding *pro se*. A *pro se* habeas petition is construed liberally and is not held to the same standards as pleadings filed by lawyers. *See Martin v. Maxey*, 98 F.3d 844 n.4 (5th

Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Livingston's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## III.    Factual Background

The state-court record provides the factual background. Michelle Parsons, a sexual-abuse investigator with the State of Texas Department of Family Protective Services, testified that on December 27, 2002, she initiated an investigation into the alleged sexual abuse of C.T., a minor. (Reporter's Record, Vol. III, p. 10). Parsons had received information that C.T. was living on a boat with her father, Derwin Livingston. (*Id.*) After visiting several marinas in Galveston County, Parsons eventually located the boat in a marina in Clear Lake Shores. (*Id.*) Officer Nolan of the Kemah Police Department accompanied Parsons to the marina, where they were joined by Chief Shelly of the Clear Lake Shores Police Department. (*Id.* at 11, 19). After locating Livingston's boat, Parsons knocked and heard movement inside. (*Id.* at 12). C.T. opened the cabin door, and Parsons identified herself. (*Id.*) Parsons testified that C.T. looked like she had just woken up. (*Id.* at 18). C.T. closed the door and went back inside, and Livingston came to the door. (*Id.* at 13). Parsons identified herself again and asked to speak with C.T. (*Id.* at 18). C.T. stepped out of the boat and onto the dock to speak with Parsons. (*Id.* at 19). Parsons testified that C.T. was visibly upset and shaking. C.T. denied any sexual abuse. (*Id.*)

Parsons got permission from Livingston to board the boat to investigate the living conditions. (*Id.* at 20). Parsons testified that the boat's interior was messy and dirty and smelled like "cigarettes, stale beer, and like sweaty sex." Both Livingston and C.T. were malodorous. (*Id.* at 22). Parsons noticed a laptop computer in the cabin. Livingston turned the computer on in response to Parsons's request. She found an image of a naked girl, approximately nine years old.

Parsons left the boat and told Livingston that C.T. would need to stay somewhere else.  (*Id.*) Livingston said he would make arrangements for C.T. to stay with her adult half-sister, Heather O'Dell.  (*Id.*) Chief Shelly drove Parsons and C.T. back to the Clear Lake Shores Police Department to wait for Heather O'Dell to arrive.  (*Id.* at 23).

O'Dell arrived with Rhonda Turner, the mother of both C.T. and Heather O'Dell.  (*Id.* at 24). O'Dell agreed to take C.T. with her and to make sure she had no contact with Livingston.  (  *Id.*) O'Dell drove to Illinois, where C.T. stayed with her maternal grandparents, Jack and Mary Turner. (*Id.* at 78).

While C.T. was in Illinois, Parsons kept in contact with her.  C.T. eventually told her that the allegations about her father were true.  (*Id.* at 42, 108).  Parsons set up a physical exam for C.T. and contacted the Illinois State Police to take a statement from the child.  (*Id.*)  In C.T.'s statement, she talked about sexual devices on the boat.  Chief Shelly obtained a warrant, searched Livingston's boat, and retrieved two sexual devices from the boat.  (*Id.* at 54).

After Livingston was arrested, he contacted another of his daughters, Dana Livingston.  (*Id.* at 122).  Livingston asked Dana Livingston to send an email from C.T.'s email account, saying that C.T. was sorry for making up the allegations of sexual abuse against her father.  (*Id.*)  Livingston also asked Dana to retrieve a black bag of sexual devices from the boat and get rid of it.  (*Id.* at 123-24). Dana Livingston retrieved the bag and took it to the police.  (*Id.*)  Dana Livingston testified that Rhonda Turner may have accompanied her when she took the bag to the police station.  (*Id.* at 124). Dana Livingston also testified that her father asked her to make anonymous calls to the child protective services agency in Illinois, hoping that multiple allegations of abuse would help his case by making C.T. seem less credible.  (*Id.* at 130).  Captain Cranston of the Clear Lake Shores Police

Department testified that Dana Livingston brought the bag of sexual devices the police station. (*Id.* at 70).

At trial, C.T. testified that when she was ten or eleven years old, an intoxicated Livingston told her that he wanted to show her "how he kissed people his own age." ( *Id.* at 93). After that incident, his conduct escalated to oral sex and sexual intercourse. (*Id.*) C.T. was twelve years old when she first had intercourse with Livingston. (*Id.*) C.T. stated that at first intercourse did not happen very often because she was not physically mature, but that ultimately it occurred over 100 times. (*Id.* at 95). C.T. testified that when she told Livingston she did not want to have intercourse, he would tell her that he felt rejected and that she did not love him. (*Id.*) C.T. would give in because she wanted to prove that she loved him. (*Id.*)

C.T. identified several nude photographs of herself that she testified were taken by Livingston. (*Id.* at 101). She also identified at least seven sexual devices that were taken from the bag Dana Livingston recovered from the boat. C.T. stated that her father used them to "stretch her out," so he could have intercourse with her. (*Id.* at 103-08).

Dr. James Lukefahr, a doctor at the University of Texas Medical Branch in Galveston, testified based on reviewing the report of the Illinois doctor who examined C.T. (Reporter's Record, Vol. IV, p. 10). Dr. Lukefahr testified that the physical examination results were consistent with C.T.'s allegations. (*Id.* at 11). Dr. Lukefahr testified that the results showed that C.T.'s vagina had been penetrated by an adult penis or some other object and it was unlikely that the other object was a tampon or a finger. (*Id.* at 27-28).

Livingston testified on his own behalf. He stated that C.T. came to live with him when she was in the sixth grade. (*Id.* at 46). Livingston eventually removed C.T. from school and began home-schooling her. (*Id.* at 47). He testified that C.T. initiated investigations by Child Protective

Services as "entertainment" and that she could cry "on cue." (*Id.* at 50, 54). Livingston testified about several prior CPS investigations. (*Id.*) One involved allegations that C.T.'s younger mentally retarded brother had sexually molested her.  Another involved allegations of an incident between C.T. and a high-school student underneath the bleachers at school. (*Id.* at 50-52). Livingston also testified that when C.T. was in sixth or seventh grade, she complained that her stepbrother, Rusty, had been inappropriate. (*Id.* at 54).  Finally, Livingston testified about an allegation by C.T. that Livingston's son had touched her inappropriately. (*Id.* at 55).  Because Livingston and his son had similar names, CPS initially thought that C.T. was referring to Livingston.  The misunderstanding was later cleared up. (*Id.*)  Livingston testified that when CPS asked whether he would like the incident removed from his file, he said no because he wanted to use it as proof that his daughter needed psychiatric help. (*Id.* at 56).  Livingston claimed that as a result of the allegation against his son, C.T. had a physical examination sometime in 2002, which showed that she was still a virgin. (*Id.* at 58).

Livingston denied ever having seen the nude photographs of C.T. found on his computer. (*Id.* at 90).  He testified that his whole family had access to the computer, and that the picture of the nude girl Parsons found was actually an 18 to 20 year-old picture of Heather O'Dell, not C.T. (*Id.* at 66, 90).

On rebuttal, the State called Kimberly Moore, a bartender at a pool hall. (*Id.* at 123).  Moore testified that Livingston would often bring C.T. to the pool hall during the day. (*Id.*)  On one occasion, Livingston brought his laptop inside to show Moore some pictures. (*Id.* at 124).  They included several nude photos of C.T. sitting on the couch and in the bathroom. (*Id.* at 125).  On redirect, Livingston admitted to having seen the pictures Moore identified, but said that he looked away when they came on the screen. (*Id.* at 129).

During the punishment phase of the trial, Heather O'Dell testified that Livingston had performed oral sex on her when she was nine years old, and that he began having intercourse with her when she was ten.  (Reporter's Record, Vol. V, p. 55).  O'Dell testified that this occurred "countless times" until she moved to Illinois when she was 12.  (*Id.*)  O'Dell also testified that she was involved in the manufacture of crystal methamphetamine with Livingston and her mother when she was 10 years old.  (*Id.* at 59).  She testified that she would help set up the lab, beakers, and test tubes and that she would stir the chemicals.  (*Id.* at 63).

On rebuttal, Livingston testified that he knew Rhonda Turner was manufacturing crystal methamphetamine, but that he was not involved.  (*Id.* at 76).  He also testified that Heather O'Dell blamed him for her husband's arrest and told him that she would get even with him.  (*Id.* at 81).  Additionally, he introduced evidence indicating that Heather O'Dell gained financially from his arrest since she took control of his tattoo shop after he was incarcerated.  (*Id.* at 80).

## IV.    The Issue of Exhaustion

The respondent argues that claim 2(a) is unexhausted and procedurally barred.  (Docket Entry No. 12, Respondent's Motion for Summary Judgment, pp. 8-11).  Claim 2(a) alleges that the trial court wrongfully failed to instruct the jury on the importance of scientifically testing the sexual devices. This claim was not raised in Livingston's state habeas proceeding.

A state prisoner must exhaust available state court remedies before he can obtain federal habeas corpus relief, unless the state corrective process is ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b) & (c); *see Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir. 1989).  To exhaust, a petitioner must "fairly present" all of his claims to the state courts. *Picard v. Connor*, 404 U.S. 270 (1981).  The claim must be presented to and ruled on by the *highest* state court, which in Texas is the Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429 (5th Cir. 1985).  This may

be accomplished by filing a habeas corpus petition in the trial court under Article 11.07 of the Texas Code of Criminal Procedure, and then appealing an adverse result to the Texas Court of Criminal Appeals.  A federal habeas petitioner fails to exhaust his state remedies when he relies on a different legal theory than he did in the state courts or when he makes the same legal claim to the federal court but supports that claim with new factual allegations not raised in the state courts.  *Dispensa v. Lynaugh*, 847 F.2d 211, 217 (5th Cir. 1987); *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989), *cert. denied*, 494 U.S. 1088 (1990).

The exhaustion requirement is "an accommodation of our federal system designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citing *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).  There is no formal requirement as to the way in which the claims are presented to the state courts.  A petitioner need not cite correct or controlling case law.  *Id.*  But the petitioner must present the substance of the federal habeas claim to the state court first.  *Id.*

In Livingston's state-court habeas application, he alleged that his trial counsel failed to request a jury or scientific testing of the sexual devices.  Livingston did not argue that the trial court erroneously failed to give such an instruction.  (*Ex parte Livingston*, Application No. 69,601-01, at 9).  The trial-court-error claim is unexhausted, and the respondent is entitled to summary judgment.  It should be noted, however, that the claim of ineffective assistance based on the failure to request this instruction is analyzed below, and that the analysis shows no basis for ruling on this claim.

## V.    The Claims of Ineffective Assistance of Trial Counsel

Livingston alleges that his trial counsel rendered ineffective assistance, asserting fifteen areas of deficiency.  Each is analyzed below.

### A.    The Legal Standard for Ineffective Assistance Claims

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and petitioner suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The district court may dispose of a claim if counsel either rendered reasonably effective assistance or if no prejudice can be shown. A court evaluating a claim of ineffective assistance need not address the reasonableness component first. If a petitioner fails to make one of the required showings, the court need not address the other. *Strickland*, 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v. Johnson*, 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied*, 509 U.S. 921 (1993)). In assessing a claim that counsel's action caused the convicted defendant prejudice, the issue is whether the defendant has shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir.), *cert. denied*, 522 U.S. 944 (1997).

### B.    The Claims that Trial Counsel Failed to Call Attention to Allegedly Exculpatory Evidence

Claims 1(a), 1(b), 1(c), and 1(e) all allege that Livingston's trial counsel failed to call attention to exculpatory evidence. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 2a-

2c). These claims are not supported by the record. Instead, the record shows that all the evidence cited by Livingston was in fact brought out at trial.

First, Livingston argues that trial counsel failed to bring attention to C.T.'s testimony that the sexual devices retrieved from Livingston's boat belonged to C.T.'s mother, Rhonda Turner. But the record shows that during C.T.'s direct examination, she stated several times that her mother had bought the sexual devices in Las Vegas or that she owned the devices. (Reporter's Record, Volume III, p. 106-07). The evidence that the sexual devices belonged to Turner, not Livingston, was before the jury. Moreover, who owned the sexual devices was irrelevant to the issue of whether Livingston used the sexual devices on C.T. Defense counsel was not deficient in failing to bring additional attention to the evidence that the sexual devices found on Livingston's boat were owned by Rhonda Turner.

Livingston also argues that his trial counsel failed to bring attention to the fact that no sexual devices were found on the boat when it was searched. It is not unreasonable for trial counsel to fail to emphasize an assertion contradicted by the record. The record showed that two of the sexual devices were recovered when the police searched the boat under the warrant. (*Id.* at 54-5). The rest of the devices were delivered to police by Rhonda Turner and Dana Livingston. (*Id.* at 124). Other evidence clearly connected all the sexual devices to Livingston. The fact that trial counsel did not focus on where the devices were found was neither deficient nor prejudicial.

Livingston argues that his trial counsel should have brought attention to the testimony of Captain Cranston of the Clear Lake Shores Police Department that Dana Livingston brought the bag of sexual devices to the station. Livingston asserts that this testimony was inconsistent with Dana Livingston's testimony that she and Rhonda Turner went to the police station together and it could have been either one of them that gave the bag to Captain Cranston. (*Id.* at 70, 124). The

inconsistency was before the jury. It was not unreasonable for trial counsel to avoid focusing more on this inconsistency, which was on a collateral matter. Whether Dana Livingston, Rhonda Turner, or both actually delivered the bag of sexual devices is irrelevant when the evidence overwhelmingly linked Livingston to those devices.

Livingston argues that his trial counsel failed to bring attention to the inconsistency between C.T.'s testimony about the first instance of intercourse with Livingston and his own testimony about the 2002 physical examination in which it was determined that C.T. was still a virgin. Livingston claims that this evidence was important because the physical examination followed the alleged first instance of intercourse. (*Id.* at 93; Reporter's Record, Volume IV, p. 58). This inconsistency was clearly before the jury. It was brought out in the testimony of both C.T. and Livingston. (*Id.*) The record does not show that trial counsel failed to bring attention to this inconsistency.

In sum, Livingston's assertions of ineffective assistance in trial counsel's failure to call attention to certain evidence is not supported by the record.

**C.     The Claim that Trial Counsel Failed to Call Rhonda Turner as a Witness**

In claim 1(d), Livingston argues that his trial counsel was unreasonable in failing to call Rhonda Turner, C.T.'s mother, as a witness during trial. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2c). Decisions on the presentation of witnesses are essentially strategic. Complaints of uncalled witnesses are not favored because the presentation of witnesses is a matter of trial strategy. *Wilkerson v. Cain*, 223 F.3d 886, 892-93 (5th Cir. 2000). To demonstrate the prejudice, a petitioner must show not only that the witness would have testified at trial, but also that this testimony would have been favorable. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Failing to call a witness whose testimony may have done more harm than good is not unreasonable. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).

Livingston argues that Rhonda Turner should have been called as a defense witness so that she could testify about the ownership of the sexual devices recovered from the boat. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2c). As noted above, who owned the devices was already before the jury, and the issue was not who originally acquired or owned the devices, but whether Livingston had used them. There was ample evidence linking the possession and use of the sexual devices to Livingston. Moreover, it is likely that Rhonda Turner would have done more harm to Livingston than good as a witness. There was testimony that Rhonda Turner cooperated with Dana Livingston by helping deliver the sexual devices to the police department. (Reporter's Record, Volume III, pp. 70, 124). Moreover, Livingston has not provided an affidavit from Rhonda Turner. Courts have "viewed with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant." *U.S. v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983). Finally, Livingston testified that Rhonda Turner was incarcerated in Illinois at the time of his trial. It is unclear that she would have been able to testify.

The record provides no support for the claim that defense counsel's failure to call Rhonda Turner as a witness at trial was either deficient or prejudicial. The respondent is entitled to summary judgment on this claim.

### D.  The Claim That Trial Counsel Failed to Move for a Jury Instruction Regarding the Necessity of Scientific Evidence

In claim 1(f), Livingston asserts that his trial counsel was ineffective in failing to ask for a jury instruction on the importance of scientific testing of the sexual devices. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2c). During direct and cross-examination, Chief Shelley of the Clear Lake Shores Police Department was asked if he had conducted any scientific testing on the sexual devices found on Livingston's boat. (Reporter's Record, Volume III, pp. 56, 62). He

responded that he did not. (*Id.*)  The record is clear that there was no scientific testing done on the devices.  The jury was aware of that uncontested fact.  Livingston has not provided the court with any proposed jury instruction.  Livingston has not provided, and this court has not found, any legal authority supporting the argument that such an instruction was required.  Trial counsel's performance in this regard was reasonable.  The respondent is entitled to summary judgment on this claim.

### E.    The Claim That Trial Counsel Failed to File a Motion to Suppress

In claim 1(g), Livingston argues that his trial counsel was deficient in not filing a motion to suppress the evidence seized from the boat, his tattoo shop, and his laptop computer.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 2e, 2g).  The record shows that a motion to suppress, if made, would have been denied.  Counsel cannot be deficient in failing to file a motion that would have been futile.

The first search of Livingston's boat was with his consent.  This is confirmed by the testimony of Parsons, Chief Shelly, and Livingston himself. (Reporter's Record, Vol. III, pp. 20, 22, 51; Vol. IV, p. 62).  During that search, Livingston also gave permission for Parsons to look at his computer and opened it for her.  (*Id.*)  A warrantless search with consent voluntarily given is valid under the Fourth Amendment. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  Livingston's tattoo shop was also searched with his consent. (Reporter's Record, Vol. III, p. 58; Vol. IV, pp. 67-69).  An additional computer was seized from the tattoo shop.  (*Id.*)  Again, Livingston's consent defeats any claim of unreasonable search and seizure under the Fourth Amendment.

The second search of Livingston's boat, during which Chief Shelly  recovered two sexual devices, was pursuant to a warrant.  (Reporter's Record, Vol. III, p. 54).  The warrant was issued after C.T. gave a statement to the Illinois State Police in which she mentioned the presence of the

sexual devices on the boat and stated that Livingston had used the devices on her. ( *Id.*) Chief Shelley's reliance on the statement and the warrant were objectively reasonable. Evidence obtained by law-enforcement officials acting in objectively reasonable good-faith reliance on a search warrant is admissible. *United States v. Gibbs*, 421 F.3d 352, 355 (5th Cir. 2005); *United States v. Davis*, 226 F.3d 346, 350-51 (5th Cir. 2000). The seizure of the devices from the boat did not violate the Fourth Amendment.

The record does not support any claim of a Fourth Amendment violation. Any motion to suppress would have been denied. Defense counsel was not deficient, and caused no prejudice, in failing to file such a motion. *Green v. Johnson*, 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999) (citing *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995)); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The respondent is entitled to summary judgment on this claim.

## F.  The Claim That Trial Counsel Failed to Use Evidence to Impeach C.T.

In claim 1(h), Livingston argues that his trial counsel was ineffective in failing to present certain evidence to impeach C.T. Livingston states:

> [Trial counsel] deliberately avoided the subject that was put forth; he avoided asking alleged victim about the 20 acres of land given to her at birth by Mr. Livingston, that her grandparents illegally sold during the time they had her in their care and custody, that which would have presented a reasonable hypothesis other than guilt of the accused.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2h). It is unclear how evidence of a previous gift of land could be used to impeach C.T.; such evidence does not call into question her credibility or version of the facts. It was reasonable for trial counsel to avoid a line of questioning that would not impeach the witness and may well have confused the jury. Moreover, trial counsel did impeach C.T. by eliciting testimony that she was a virgin at some time after the first alleged

sexual assault by her father.  (Reporter's Record, Vol. III, pp. 115-16, 119-20).  Trial counsel also elicited testimony that C.T. failed to identify a piercing on Livingston's penis.  Livingston has not shown that his counsel's choice was either deficient or prejudicial.  The respondent is entitled to summary judgment on this claim.

### G.   The Claim That Trial Counsel Agreed to Use One Less Strike During Jury Selection

During jury selection, a large portion of the panel was struck for cause.  (Reporter's Record, Vol. II, 76).  Too few remained to allow ten strikes per side.  The parties agreed to use nine strikes each to move forward with jury selection and trial.  (*Id.* at 77-78).  In claim 1(i), Livingston claims that defense counsel's failure to ask for a new jury panel was ineffective assistance.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2i).

Trial counsel provided an affidavit to the state habeas court.  In the affidavit, counsel stated that Livingston agreed to waive one strike so that they could proceed.  (   *Ex parte Livingston*, Application No. 69,601-01 at 110).  The record is consistent.  The state habeas court found that the statements contained in trial counsel's affidavit were true.  (Reporter's Record, Vol. II, 76-78; *Ex parte Livingston*, Application No. 69,601-01 at 107).  Livingston has presented no evidence to rebut this presumptively correct finding.  The record shows that Livingston agreed to waive the additional jury strike.  There is no basis to find that trial counsel was deficient in failing to demand a new jury panel. *See United States v. Gray*, 626 F.2d 494, 501 (5th Cir. 1980) (finding that a defendant cannot subsequently complain of a jury instruction that he requested).

Nor does the record show that trial counsel's approach was prejudicial.  If trial counsel had insisted on a new panel, a different jury would have been chosen, but the same evidence would have been presented.  There is no indication that the jury in Livingston's trial was more biased against him

than a subsequent jury would have been.  Livingston has not shown ineffective assistance on the basis of the waived jury strike.  The respondent is entitled to summary judgment on this claim.

### H.    The Claim That Trial Counsel Failed to Object to Consolidation

In claim 1j, Livingston argues that defense counsel should not have consented to a consolidation of the four indictments.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2j).  Livingston does not state the grounds on which counsel could have objected to the consolidation or how he was prejudiced.  The allegation is conclusory, unsupported, and provides no basis for federal habeas relief.  *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

The record also shows that if counsel had objected to the consolidation, such an objection would have been overruled.  Under Texas law, the State may consolidate charges with 30 days' written notice when the "offenses are the repeated commission of the same or similar offenses." TEX. PENAL CODE §§ 3.01-3.02. The indictments had been consolidated before the first trial.  There is no question that Livingston had ample notice of the consolidation before his second trial. (Clerk's Record, No. 08CR0084, p. 89; No. 08CR0085, p. 39; No. 08CR0086, p. 39; No. 08CR0087, p. 39). A defendant is not entitled to a severance of charges that are consolidated under section 3.02 when the consolidated charges are for sexual assault of a minor.  *See* TEX. PENAL CODE §§ 3.03(b), 3.04. While a trial court may allow a severance if it determines that the defendant would be unfairly prejudiced by joinder, there is no basis to find such prejudice in this case. *Id. See Darling v. State*, 262 S.W.3d 920, 926 (Tex. App.–Texarkana 2008, pet. ref'd) (finding prejudice where the offenses involved different manners of commission, different degrees of severity, and different victims); *Wheat v. State* 196 S.W.3d 350, 353 (Tex. App.–Waco 2006, pet. ref'd.) (finding prejudice where the defendant plead guilty to one of the counts before the same jury which would hear the other counts).  Because a motion to sever would likely have been denied, defense counsel was not

deficient, and caused no prejudice, in failing to object to consolidation. *Koch v. Puckett*, 907 at 527. The respondent is entitled to summary judgment on this claim.

**I.     The Claim That Trial Counsel Failed to Object to the Admission of Photographs of C.T.**

In claim 1(k), Livingston asserts that trial counsel was deficient in failing to object to the admission of nude photographs of the victim, C.T. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2n). Livingston argues that trial counsel should have objected on the ground that the Secret Service agent who identified the photos in the first trial was not present to identify the photographs in the second trial. (*Id.*) But there was no legal requirement for such testimony in either trial. Under Texas law, a photograph is generally admissible if verbal testimony about the matters depicted in the photograph is also admissible. *Paredes v. State*, 129 S.W.3d 530, 540 (Tex. Crim. App. 2004). The nude photographs were admitted after C.T. identified the photographs as pictures of herself taken by Livingston. (Reporter's Record, Vol. III, p. 98). Her testimony was admissible and sufficient to authenticate the photographs. TEX. R. EVID. 901. There was no need for additional authentication evidence.

Texas Rule of Evidence 403 allows the exclusion of otherwise admissible evidence if its probative value is outweighed by the danger of unfair prejudice, but it is unlikely that the trial court would have been sympathetic to such an argument given the close relationship between the crimes alleged and the content of the photographs. Because there was no reasonable basis for counsel to object to the admission of the photographs, it was not deficient to fail to do so. The respondent is entitled to summary judgment on this claim.

**J.     The Claim That Trial Counsel Aided the State in Redaction of Exculpatory Evidence**

During trial, C.T.'s CPS file and medical records were admitted.  (Reporter's Record, Vol. VII, State's Exhibit 25).  In claim 1(l), Livingston argues that his counsel was deficient when he allowed the State to redact certain portions of those records.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2p).  Livingston claims that the redacted portion was exculpatory because it included information provided by C.T. that made her seem unreliable.  (*Id.*)  In the affidavit defense counsel filed with the state habeas court, he stated that the redaction was required by state law.  (*Ex parte Livingston*, Application No. 69,601-01 at 86).  This is consistent with the trial court record, which contains defense counsel's explanation to the trial court of the reason for the redaction. (Reporter's Record, Vol. IV, p. 9).  The trial court found the statement to be true, and the state habeas court credited this finding.  (*Id.* at 107, page after cover).  Livingston has not presented contrary evidence. It was not deficient for defense counsel to fail to object to the redaction of the materials.  Nor has Livingston presented any basis to conclude that the failure to object to the redaction was prejudicial. Accordingly, the respondent is entitled to summary judgment on this claim.

### K.    The Claim That Trial Counsel Failed to Subpoena Livingston's Business Records

In claim 1(m), Livingston argues that his trial counsel was deficient in failing to subpoena business records from the tattoo business. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2q).  Livingston claims that counsel could have used this information to impeach Heather O'Dell, who financially benefitted from Livingston's incarceration because she took over management of the tattoo business.  (*Id.*)

O'Dell testified in both the guilt-innocence and the punishment phase of Livingston's trial. During the guilt-innocence phase, trial counsel did not question O'Dell about her financial interest

in the tattoo shop. (Reporter's Record, Vol. III, pp. 71-84). However, there was no need to impeach O'Dell at that time because she did not say anything harmful to Livingston or anything that could establish an element of the alleged crimes. (*Id.*) Her testimony was confined to a description of her relationship with Livingston and C.T. and an account of the day she picked C.T. up from the police station and used Livingston's car to drive her to Illinois. (*Id.*) It was sound trial strategy for defense counsel to refrain from trying to impeach a witness who gave no harmful testimony.

During the punishment phase, Heather O'Dell testified again. (Reporter's Record, Vol. V, pp. 53-75). Her testimony during this phase was damaging. She testified about her experience as a child victim of Livingston's sexual abuse and her involvement with Livingston's methamphetamine manufacturing operation. (*Id.* at 53-61). During the punishment phase, defense counsel did impeach Heather O'Dell by eliciting testimony from her that she benefitted financially from running Livingston's tattoo operations while he was incarcerated, and that she blamed Livingston for his role in having her husband's parole revoked. (*Id.* at 67-75). Because Heather O'Dell admitted her financial interest, having the records was not necessary to impeach her testimony and would have been cumulative. Livingston has not shown either deficient performance by counsel or prejudice. The respondent is entitled to summary judgment on this claim.

## L.     The Claim That Trial Counsel Failed to Present a Closing Argument

In claim 1(n), Livingston argues that his trial counsel's closing argument "argued nothing, thereby cheating defendant out of a closing argument." (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2r). The record contradicts this claim. In examining counsel's closing argument against an ineffective-assistance allegation, a court considers the argument in its entirety. *Carter v. Johnson*, 131 F.3d 452, 446 (5th Cir.1997). In the closing argument, defense counsel fully laid the theory of defense. (Reporter's Record, Vol V, pp. 8-29). Defense counsel methodically reviewed

the testimony of every government witness and focused on numerous inconsistencies and possible motivations to lie. Defense counsel pointed out the following aspects of the evidence:

(1)     Parsons immediately answered questions posed by the State but wavered when answering questions on cross-examination;

(2)     Parsons admitted that Livingston was cooperative when she showed up at his boat;

(3)     C.T. initially denied the allegations against Livingston;

(4)     CPS closed several cases that had been initiated against Livingston for lack of evidence;

(5)     Chief Shelley did not call the district attorney's office when he saw the first photograph on Livingston's computer;

(6)     the investigating agencies failed to do any scientific testing on any of the evidence;

(7)     Livingston cooperated in letting Heather O'Dell use his car to get to Illinois;

(8)     C.T. wanted to move back in with her grandparents, providing a motive to make false accusations;

(9)     C.T. was uncertain about when the first incident of alleged sexual intercourse occurred;

(10)   C.T. failed to mention Livingston's penis-piercing;

(11)   Dana Livingston had maintained a good relationship with her father;

(12)   Dr. Lukefahr did not personally examine C.T.;

(13)   Livingston cooperated in the CPS investigation into C.T.'s report about the boy at C.T.'s school; and

(14)   there was evidence of a 2002 examination showing that C.T. was a virgin, after the first alleged assault.

The closing argument as a whole was thorough and vigorous. It highlighted weaknesses in the State's case and strengths of the defense case. Defense counsel's argument was reasonable and Livingston has not shown prejudice. The respondent is entitled to summary judgment on this claim.

### M. The Claim That Trial Counsel Failed to Adequately Represent the Petitioner at the Motion for New Trial Hearing

In claim 1(o), Livingston claims that he was denied counsel at the hearing on his motion for a new trial. His only support for this claim is that defense counsel said at the hearing "he was not going to stand there and argue the points of the case." (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2r). Livingston claims that this was an expression of counsel's unwillingness to provide him a defense. The record shows no basis for Livingston's claim that he was unrepresented at this hearing or with respect to this motion. Defense counsel filed a written motion for new trial, which adequately laid out the legal and factual bases for the relief sought. (Clerk's Record, 03CR0084, p. 136). The respondent is entitled to summary judgment on this claim.

Livingston is not entitled to the relief he seeks on any of the claims of ineffective assistance of counsel.

## VI. The Claims of Trial-Court Error

### A. The Claim That the Trial Court Prevented Trial Counsel from Rendering Effective Assistance

In claim 2(b), Livingston alleged that the trial court prevented defense counsel from rendering effective assistance. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2h). Livingston quotes one statement taken from the motion for new trial in support. In the motion, trial counsel wrote "Defendant had several meritorious defenses but the Defense was prohibited by the trial court from presenting these defenses and from going into any area of discovery that involved the possibility of bias and prejudice on behalf of the state witnesses." (*Id.*; Clerk's Record, No.

03CR0085, p. 90). The trial court's refusal to entertain certain defenses is distinct from a claim that the court prevented defense counsel from rendering effective assistance. This court has determined that the state court's conclusion that trial counsel's assistance was reasonable is supported by the record and federal law. The trial court did not prevent defense counsel from rendering effective assistance.

Livingston does not state which defenses were wrongfully prevented from being presented. His claims are conclusory and do not support federal habeas relief. *Ross v. Estelle*, 694 F.2d at 1011. The respondent is entitled to summary judgement on this claim.

### B.    The Claim That the Trial Court Failed to Remain Unbiased

Livingston's claim 2(c) is intertwined with claim 2(b). In claim 2(c), Livingston argued that the trial court was a biased fact-finder. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2h). The support for this claim is the quote from Livingston's motion for new trial cited as the basis for claim 2(b). The claim that the trial court was biased is conclusory. Livingston does not cite specific instances of bias and the record shows none. Because the allegation is conclusory and unsupported, it provides no basis for federal habeas relief. *Ross v. Estelle*, 694 F.2d at 1012. The respondent is entitled to summary judgment on this claim.

### C.    The Claim That the Trial Court Empaneled the Jury in the Face of Media Coverage

In claim 2(d), Livingston argues that the trial court wrongfully empaneled the jury in the face of extensive media coverage. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2i). According to Livingston, the trial judge presiding over the first trial used an 80-member jury panel because of extensive media attention. (*Id.*; Clerk's Record, 03CR0084, pp. 71-75). The judge presiding over the retrial used a 45-member panel. (*Id.* at 107-109). Livingston claims that due to

the media coverage, the smaller panel resulted in a biased jury. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2i).

The record contradicts Livingston's assertions. During jury selection, the trial judge told the panel that he did not think there would be media coverage about the case, but that they should ignore anything they saw. (Reporter's Record, Vol. II, p. 79). There is no evidence of media attention that created a problem in seating the jury in the second trial. The respondent is entitled to summary judgment on this issue.

### D.    The Claim That the Trial Court Wrongfully Consolidated the Indictments

In claim 2(e), Livingston claimed that the trial court wrongfully consolidated the indictments without 30 days' notice, as required by Texas Penal Code § 3.02. Although it is not clear from the record when Livingston received notice of the State's intention to consolidate the charges for trial, it was before the first trial. (Clerk's Record, No. 08CR0084, p. 89; No. 08CR0085, p. 39; No. 08CR0086, p. 39; No. 08CR0087, p. 39). Livingston's second trial was several months after the mistrial. He had more than 30 days' notice of the consolidation before that trial.

A state prisoner seeking federal court review of a conviction under 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994). Federal habeas corpus relief will not issue to correct errors of state constitutional, evidentiary, statutory, or procedural law, unless a federal issue is also presented. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The question before a federal habeas court is not whether the state court correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir.), *cert. denied*, 479 U.S. 930 (1986). Even if there had been a failure to receive 30 days' notice of

consolidation, as required by Texas law, that does not implicate a federal constitutional right.  The respondent is entitled to summary judgment on this claim.

### E.     The Claim That the Trial Court did not Conduct a Competency Hearing

Only a competent defendant may stand trial or plead guilty.  *See Godinez v. Moran*, 509 U.S. 389 (1993); *Pate v. Robinson*, 383 U.S. 375 (1966).  The federal standard for competence is that the defendant have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).  Livingston does not raise a substantive claim that he was incompetent to proceed to trial.  Nor does he assert that the trial court wrongfully refused to have such a hearing.  Rather, in claim 2F, Livingston asserts that the trial court should have on its own required a competency hearing.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2q).

"Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing." *Pate*, 383 U.S. at 385.  "In determining whether a competency hearing is required, a trial court should give particular consideration to (1) the existence of a history of irrational behavior; (2) the defendant's bearing and demeanor at the time of trial; and (3) prior medical opinions." *Enriquez v. Procunier*, 752 F.2d 111.

During the pendency of the case against him, Livingston underwent a psychiatric examination.  The examiner concluded that Livingston was free from any mental problems or disease that would prevent him from assisting in his own defense. (*Ex parte Livingston*, Application No. 69,601-01 at 86).  There was no indication on the record of any behavior or demeanor at the time of trial that should have alerted the trial court to any concerns about competency.  It was reasonable not to pursue the issue of competency.

Livingston argues that in September, 1991, a court appointed Livingston's wife as his guardian. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, Ex. A, pp. 6-17). That order had expired long before Livingston was tried. There was no indication of any basis to find him incompetent at that time. The respondent is entitled to summary judgment on this claim.

**F.      The Claim That the Trial Court Judge did not Take an Oath of Office**

In claim 2(g), Livingston asserted that he was harmed when a visiting judge presided over his trial without first taking an oath of office. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2k). In support, Livingston provided a letter from the Texas Secretary of State, stating that his office had oath-of-office filings for that visiting judge from 1981, 1985, 1989, and 1992 and a Statement of Elected/Appointed Officer filings for that judge from 2004, 2005, and 2006. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, Ex. A, p. 5). Under Texas law, "[a] person who is a retired or former judge shall, before accepting an assignment as a visiting judge of a statutory county court, take the oath of office required by the constitution and file the oath with the regional presiding judge." TEX. GOV'T CODE § 25.0017(a) (West 2004). The letter from the Secretary of State is not proof that the trial judge did not take an oath of office before Livingston's trial. And even if the judge did not take an oath of office immediately prior to Livingston's trial, "the statute does not specify that [a judge] must renew [his] oath before every assignment." *Ebert v. State*, 2007 WL 2141557, *5 (Tex. App.–Austin, July 27, 2007).

A state prisoner seeking federal court relief from a conviction under 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. *Lawrence v. Lensing*, 42 F.3d at 258. Federal habeas corpus relief will not issue to correct errors of state constitutional, evidentiary, statutory, or procedural law, unless a federal issue is also presented. *Estelle v. McGuire*, 502 U.S. at 67-68. Even if there was a failure to renew the oath of office under state law, that does not implicate a federal

constitutional right.  Livingston has not shown that the judge failed to take the oath of office or any federal constitutional violation.  The respondent is entitled to summary judgment on this claim.

### G.    The Claim that the Trial Court Improperly Retried Livingston

In claim 2(h), Livingston argues that his retrial after a hung jury constituted double jeopardy, in violation of the Constitution.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2l).  "It has been established . . . since the opinion of Justice Story in *United States v. Perez*, 9 Wheat. 579, 6 L. Ed. 165 (1824), that a failure of the jury to agree on a verdict was an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant."  *U.S. v. Mauskar*, 557 F.3d 219, 228 (5th Cir. 2009) (citing *Richardson v. U.S.*, 468 U.S. 317, 323-34 (1984)).  A retrial following a hung jury does not violate the Double Jeopardy Clause.  *Id.*

Livingston also argues that the second trial was biased and unfair because the State pursued only four of the six counts charged in the first case.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2l).  He provides no basis to find that this was either error or a source of prejudice.

Livingston also argues that the second trial, which began 84 days after the mistrial was declared, violated 18 U.S.C.A § 3161(e), which states that a new trial "shall commence within seventy days from the date the action occasioning the retrial becomes final."  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2l).  This is a federal statute applicable to federal prosecutions, not to Livingston's state case.  Livingston's retrial did not violate federal constitutional guarantees.  The respondent is entitled to summary judgment on this claim.

### VII.    The Claim That Appellate Counsel Failed to Move to Strike the State's Brief

A criminal defendant has a constitutional right to effective assistance of counsel on direct appeal.  U.S. CONST. AMEND. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. at 688; *Anders v. California*, 386 U.S. 738, 744 (1967).  An ineffective

assistance claim at the appellate level is governed by the *Strickland* standard. With respect to the deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999). Counsel is obligated to raise and brief those issues believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004); *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999). To show ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (citing *Strickland*, 104 S. Ct. at 2064). This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.* (quoting *Williamson*, 183 F.3d at 462-63).

In claim 3, Livingston argues that he was denied effective counsel on appeal by the failure to file a motion to strike the State's late-filed appellate brief. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2g). According to Livingston, the State's appellate brief was filed nearly two months late. (*Id.*) Appellate counsel's affidavit asserts that the State's appellate brief was considered timely filed by the appellate court. The state habeas court accepted this affidavit as true. *Ex parte Livingston*, Application No. 69,601-01 at page after cover, 84, 107). If the State's brief was in fact timely filed, then it was not unreasonable for appellate counsel to fail to object. Even if the brief was late, it was not unreasonable for appellate counsel to cooperate with opposing counsel by allowing a late filing.

Even assuming that State's brief was filed late, counsel's failure to object did not result in prejudice. The Court of Appeals held that there was no error sufficient to overturn Livingston's conviction. *Livingston v. State*, Nos. 01-04-00955-CR, 01-04-00956-CR, 01-04-00957-CR, and

01-04-00958-CR (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd).  Even if appellate counsel had

filed a motion to strike, there is no basis to find that Livingston's appeal presented reversible error.

Livingston has not demonstrated that he was denied ineffective assistance of appellate counsel.  The

respondent is entitled to summary judgment on this claim.

**VIII.  The Claim That the Appellate Court Wrongfully Allowed the State to File its Brief Late**

In claim 4, Livingston claims that the appellate court denied him due process when it allowed

the State to filed its brief late.  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2g).  The

state habeas court found that the brief was timely filed, and this court must defer to that finding.

However, even if the brief was filed late, it was not a due process violation.  As noted, federal habeas

corpus relief will not issue to correct errors of state law unless a federal violation is also present.

*Estelle*, 502 U.S. at 67-68.  The state appellate court considered Livingston's claims on the merits

and determined that there was no basis to reverse his conviction.  Accepting a late-filed brief did not

give rise to a federal due process claim.  The respondent is entitled to summary judgment.

**IX.    The Claims of Prosecutorial Misconduct**

**A.      The Claim That the Prosecution Presented False Testimony and Evidence**

In claim 5(a), Livingston argues that the prosecution presented false testimony "while the

judge's back was turned."  (Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 2n-2o).

Livingston claims that during the direct examination of Parsons, the prosecutor fumbled through her

exhibits while trying to locate a copy of the first picture found on Livingston's computer.  (*Id.*)

Livingston claims that while the prosecutor was looking for the picture, she surreptitiously tried to

show the jury pictures of the subsequently conducted vaginal exam of C.T., to make the jury think

that those pictures were on Livingston's computer.  (*Id.*)  Livingston claims that his attorney was

trying to distract him by whispering questions and that the judge's chair was turned around so that

he could not see the parties or the jury. (*Id.*) Livingston asserts that his own lawyer was trying to prevent him from noticing the photos and to prevent him from hearing Parsons' false testimony about the photograph of a naked child standing in a river, which Parsons described as showing a "spread-eagle" pose. (*Id.*) According to Livingston, the jury's sight of the pictures prejudiced them beyond repair. (*Id.*) Livingston states that when the prosecutor showed the jury the pictures, he stood up from his wheelchair and shouted, "[t]hat's not on the computer, that's PERJURY." (*Id.*)

"A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected." *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir.), *cert. denied*, 524 U.S. 933 (1998). To obtain a reversal based on a prosecutor's use of perjured testimony or failure to correct such testimony, a habeas petitioner must demonstrate that: (1) the testimony was actually false; (2) the State knew it was false; and (3) the testimony was material. *See id.*

Parsons testified that the photograph she found on Livingston's computer showed an "eight or nine-year-old girl standing spread eagle like this in a river bed." (Reporter's Record, Vol. III, p. 39). The photograph shows a naked girl standing in water with her legs together and arms by her side. (Reporter's Record, Volume VII, State's Exhibit 3). The description of the photograph as depicting a "spread eagle" pose is the testimony Livingston claims was false. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2n). Even assuming that it was false to characterize the picture in such a way, and the State knew it was false when Parsons said it, Livingston is not entitled to relief on this claim.

First, Parsons was immediately questioned by defense counsel about whether the picture in fact showed such any such pose and whether the photograph was sexually provocative. (Reporter's Record, Vol. III, pp. 39-40). The photograph was later entered into evidence. Testimony was

elicited from Chief Shelley that the child was not in a "spread eagle" pose in the photograph. (*Id.* at 52, 59). Because Parsons was adequately cross-examined, the photograph was shown to the jury, and contrary testimony was presented, the challenged testimony was not material or prejudicial.

Livingston also claims that the State presented false evidence by showing photographs of the vaginal exam while pretending to look for the photograph found on Livingston's computer. The testimony of Parsons, Chief Shelley, and C.T. is about which photographs were recovered from Livingston's computer. No witness stated that the photographs of the vaginal exam were found on the computer. (*Id.* at 39-40, 52, 59, 97). The photographs of the exam were entered into evidence during Dr. Lukefahr's testimony. He clearly stated that the photographs were taken as part of a physical exam. (Reporter's Record, Vol. IV, p. 10). There is no evidence to support Livingston's claim of a deliberate effort by the prosecutor and defense counsel to show the jury other pictures and make the jury think those were on Livingston's computer. Any inadvertent disclosure of the photographs earlier in the trial was harmless. Livingston is not entitled to relief on this claim. The respondent is entitled to summary judgment.

**B.    The Claim That the Prosecution Failed to Disclose a Psychiatric Report Evidencing the Petitioner's Incompetence**

In claim 5(b), Livingston argued that the prosecutors wrongfully suppressed the psychiatric report created in conjunction with his previous guardianship case. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2p-2q). A prosecutor must disclose evidence favorable to an accused under *Brady v. Maryland*, 373 U.S. 83 (1963). To show a *Brady* violation, "a defendant must show that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment." *United States v. Miller*, 520

F.3d 504, 514 (5th Cir. 2008). The evidence cited was well known to Livingston. The record shows no *Brady* violation. The respondent is entitled to summary judgment on this claim.

### C.    The Claim That the Prosecution Suppressed Exculpatory Evidence

In claim 5(c), Livingston argued that the State suppressed exculpatory evidence by redacting C.T.'s CPS records. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2p). As discussed in section V(J) above, Livingston claimed that the redacted information would have made C.T. seem less credible had it been presented to the jury. (*Id.*) The state court found that this redaction was done to comply with Texas law. (*Ex parte Livingston*, Application No. 69,601-01 at page after cover, 86, 107). Livingston has not presented contravening evidence.

Even if Texas law did not require the redaction, Livingston had not made a viable *Brady* claim. Livingston was aware of the information and failed to show how he was prejudiced. The respondent is entitled to summary judgment on this claim.

### D.    The Claim That the Prosecution Improperly Investigated the Crimes

In claim 5(d), Livingston argued that he was denied due process because the State's investigation "had a blind focus which ignored leads to evidence inconsistent with the premature conclusion that Petitioner had committed the crime." (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2r-2s). Livingston argues that C.T. was not immediately examined after leaving the boat. (*Id.*)

To establish a due process violation from the government's failure to preserve evidence, "a defendant must show that (1) government officials acted in bad faith; (2) the evidence is material in showing the defendant's innocence; and (3) there is no alternative means of demonstrating the defendant's innocence." *United States v. Thompson*, 130 F.3d 676, 686 (5th Cir. 1997) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56 (1988)). Livingston has not shown any bad faith on the part

of the government. He cannot make a claim for prosecutorial misconduct on this basis. The respondent is entitled to summary judgment on this claim.

## X.   The Claim That the Conviction was Obtained by Evidence That Should Have Been Excluded

Livingston asserts that the evidence taken from his boat, tattoo parlor, and laptop computer was seized in violation of the Fourth Amendment. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2d-2f). Livingston is precluded from relitigating his Fourth Amendment claim in this federal habeas proceeding because the State provided him an opportunity for full and fail litigation of the claim in state court. When such an opportunity is provided, a state prisoner may not secure federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976). The Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that: "an opportunity." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192.

Under *Stone*, search and seizure claims cannot be a basis for federal habeas relief unless the petitioner presents sufficient "allegations that the processes provided by the state to fully and fairly litigate Fourth Amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of Fourth Amendment claims on their merits." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). If the state court record reflects that the petitioner's opportunity to challenge the introduction of evidence was "not circumscribed," a federal habeas court will not "scrutinize a

state court's application of fourth amendment principles." *Billiot v. Maggio*, 694 F.2d 98, 100 (5th Cir. 1982).

Under Texas law, Livingston had a full opportunity to litigate his Fourth Amendment claims through pretrial and trial motions to suppress evidence. TEX. CODE CRIM. PROC. art. 28.01 § 1(6). *See also Self v. Collins*, 973 F.2d 1198, 1208 (5th Cir. 1992). The respondent is entitled to summary judgment on this claim.

**XI.     The Claim That Livingston's Right to Confront Witnesses was Violated**

In claim 7, Livingston argued that his right to confront the witnesses against him was violated by Rhonda Turner's absence from the trial. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 2c). The Sixth Amendment guarantees a criminal defendant's right to confront the witnesses against him through cross-examination. *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). This guarantee requires the exclusion of out-of-court statements of nontestifying declarants. *Crawford v. Washington*, 541 U.S. 36, 54-56 (2004). Rhonda Turner was not called as a government witness. No out-of-court statements attributable to Rhonda Turner were presented to the jury. Livingston's Sixth Amendment right to confrontation was not implicated. The respondent is entitled to summary judgment on this claim.

**XII.    Conclusion**

The respondent's Motion for Summary Judgment, (Docket Entry No. 12), is granted. Livingston's petition for writ of habeas corpus is denied, and those claims are dismissed.

Under AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). A court grants a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has denied a claim on procedural grounds, however, the petitioner must also demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* As the Supreme Court made clear in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), a COA is "a jurisdictional prerequisite." In considering a request for a COA, "[t]he question is debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 1042. Because Livingston has not made the necessary showing, this court will not issue a COA.

SIGNED on May 26, 2009, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge